THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TRACY TAYLOR, Defendant-Appellant.

Second District   No. 2—90—0809

Opinion filed April 30, 1993.

G. Joseph Weller, Steven E. Wiltgen, and Francine Harrison, all of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of Geneva (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Tracy Taylor, was charged by indictment in the circuit court of Kane County with the offenses of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(2)) and attempted robbery (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 18—1(a)). The State nol-prossed the attempted robbery charge at the close of its case in chief. A jury found defendant guilty of aggravated criminal sexual assault, and the court sentenced him to 30 years' imprisonment in the Illinois Department of Corrections.

The sole issue on appeal is whether the trial court denied defendant his constitutional right to a public trial by excluding members of his family from the courtroom during the jury selection process.

Prior to *voir dire*, the defendant moved to exclude witnesses. The State did not object, and defendant's exclusion motion was granted by the court with the proviso that each side control its own witnesses. As part of the *voir dire* process, the court announced to the assembled venire the names of Joe Green and Martha Mae Green, defendant's stepfather and mother, as potential witnesses. Subsequently, the following exchange took place between counsel and the court outside the presence of the prospective jurors:

> "MR. McCULLOCH: Judge, is there any particular reason why my client's family can't be in the courtroom during jury selection?
>
> THE COURT: I don't want them here during jury selection.

MR. McCULLOCH: I know. I think he's entitled to have them here.

THE COURT: He is during the course of the trial.

MR. McCULLOCH: Since two of them are witnesses, they will be excluded during trial. I think they should be able to at least sit in and see people selected. For the record they haven't been interfering with anybody.

THE COURT: I already made a decision, Tom. I do it for every trial. I don't want any witnesses or family members or anything else in there while we're picking the jury. I don't want any comments back there that can be overheard to influence any of the jurors.

MR. McCULLOCH: No comments have been made.

THE COURT: I don't know that and I'm not going to take the chance.

MR. McCULLOCH: I want the record to show that we object.

THE COURT: That's fine."

Defendant's presentence investigation indicated his family included a stepfather, mother, and six siblings. Defendant explains in a footnote in his brief: "Presumably, the court had previously excluded members of the defendant's family from jury selection and this apparently took place outside the record." The State does not dispute defendant's statement.

As a preliminary matter, the State requests that we limit the scope of our review to the extent of defendant's post-trial motion claim of error which stated:

"That the court erred in denying the defendant his right to a public trial in that, during *voir dire*, the court excluded the defendant's *parents*." (Emphasis added.)

Relying on the legal principle of waiver, the State urges that defendant is not entitled to review of the exclusion of anyone other than his parents.

■ Section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 116—1) requires the filing of written motions for a new trial containing assignment of errors and specifying the grounds therefore. Issues not properly preserved in this manner will be deemed waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) There are three exceptions to the waiver rule where a defendant fails to comply with the requirements of section 116—1. A reviewing court may consider (1) constitutional issues which have been properly raised at trial and which can be raised later in a post-conviction hearing peti-

tion (see Ill. Rev. Stat. 1989, ch. 38, par. 122—1), (2) issues concerning the sufficiency of the evidence, and (3) plain error (see 134 Ill. 2d R. 615(a)). *Enoch*, 122 Ill. 2d at 190-91.

For purposes of the case before us, we deem the waiver rule inapplicable because, as will be shown, the defendant has properly raised constitutional issues at trial which can be later raised in a postconviction hearing petition. Consequently, the scope of our review will extend to the consequences of the trial judge's exclusion during jury selection of not only Joe and Martha Mae Green but also other members of defendant's family.

Defendant contends that the exclusion of his family constituted a violation of his sixth amendment right to a public trial. We first examine the relationship between the process of selecting a jury and the sixth amendment right to a public trial. The sixth amendment guarantees that a defendant shall enjoy "the right to a speedy and public trial." (U.S. Const., amend. VI.) The fourteenth amendment guarantees defendants in State prosecutions a public trial. (*Re Oliver* (1948), 333 U.S. 257, 266-73, 92 L. Ed. 682, 690-94, 68 S. Ct. 499, 504-07; see also *Waller v. Georgia* (1984), 467 U.S. 39, 46, 81 L. Ed. 2d 31, 38, 104 S. Ct. 2210, 2215.) The public trial guarantee was created for the benefit of the defendants. (*Waller*, 467 U.S. at 46, 81 L. Ed. 2d at 38, 104 S. Ct. at 2215.) It discourages perjury and ensures that judges, lawyers and witnesses carry out their respective functions responsibly. (*Waller*, 467 U.S. at 46, 81 L. Ed. 2d at 38, 104 S. Ct. at 2215.) "Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system." *Gannett Co. v. DePasquale* (1979), 443 U.S. 368, 383, 61 L. Ed. 2d 608, 623, 99 S. Ct. 2898, 2907.

Recent judicial expression on the scope of a defendant's right to a public trial had its genesis in cases interpreting the right to a public trial under the first amendment to the United States Constitution. In one of these cases, *Press-Enterprise Co. v. Superior Court* (1984), 464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819, the court decided that constitutional guarantees of public proceedings in criminal trials cover proceedings for a *voir dire* examination of potential jurors. *Press-Enterprise* was subsequently relied on in *Waller v. Georgia* (1984), 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210, where the court held that the sixth amendment right to a public trial applies to hearings on motions to suppress evidence. The court noted that *Press-Enterprise* was premised on the first amendment right of the public

and the press to attend *voir dire* proceedings but added, "Nevertheless, there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." (*Waller*, 467 U.S. at 46, 81 L. Ed. 2d at 38, 104 S. Ct. at 2215; see also *United States v. Kobli* (3d Cir. 1949), 172 F.2d 919 (holding that the selection of the jury constitutes part of a public trial).) Accordingly, it is clear that the public trial aspect of the sixth amendment applies to the *voir dire* and the individual jury selection process.

■ We next address defendant's request that we interpret the trial judge's statement that "I don't want any witnesses or family members or *anything else* in there while we're picking the jury" (emphasis added) to constitute a total exclusion of the public from the courtroom during jury selection. The State maintains that what occurred was, at best, only a partial closure of defendant's trial. We refuse to give the broad interpretation sought by defendant to the words "or anything else," in or out of context. Defendant's request to the court was to have his family present during jury selection. The judge's specific reason for exclusion was to avoid comments which could be overheard by and influence the jury. We interpret "anything else" to be the equivalent of family members, *i.e.*, those persons so closely associated to the defendant by blood or special interest as to have the potential to display openly feelings inappropriate for a criminal trial setting and thus affect the impartiality of the jury. The defendant's brush sweeps too broadly. We decline to encompass the entire general public within the phrase "or anything else" in the context of the factual presentation confronting us. Thus, we view the trial court's ruling on public attendance during the jury selection not as a total closure to the public but as a partial closure limited to defendant's parents and other family members.

■ The defendant and State next disagree on which legal standard should be applied in situations involving partial, in contrast to total, closures of public trials. The State acknowledges that some older Illinois case law held that the right to a public trial is violated only by a general indiscriminate exclusion of the public. (See *People v. Dronso* (1967), 83 Ill. App. 2d 59; *People v. Brumfield* (1979), 72 Ill. App. 3d 107.) Since *Dronso* and *Brumfield*, however, the United States Supreme Court decided *Press-Enterprise* (464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819) and *Waller* (467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210).

In *Waller*, the court adhered to the test for closing a trial proceeding enunciated in *Press-Enterprise*: "[T]he party seeking to close

the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." (*Waller*, 467 U.S. at 48, 81 L. Ed. 2d at 39, 104 S. Ct. at 2216.) The *Press-Enterprise/Waller* test makes no explicit distinction between a total and a partial closure. *Waller*, however, addressed total closure of an entire suppression hearing (the suppression hearing was conducted after the trial had commenced and was therefore considered a part of the trial) and does not necessarily govern partial closures. (*United States v. Sherlock* (9th Cir. 1989), 865 F.2d 1069, 1076.) Defendant asks that we adopt the *Press-Enterprise/Waller* "overriding interest" test. On the other hand, for purposes of the partial closure which occurred here, the State asks us to eschew the overriding interest test and adopt the lesser "substantial reason" test espoused in *Douglas v. Wainwright* (11th Cir. 1983), 714 F.2d 1532, *vacated & remanded* (1984), 468 U.S. 1212, 82 L. Ed. 2d 879, 104 S. Ct. 3580, *aff'd on remand* (11th Cir. 1984), 739 F.2d 531. See also *Nieto v. Sullivan* (10th Cir. 1989), 879 F.2d 743; *United States v. Sherlock* (9th Cir. 1989), 865 F.2d 1069.

Starting with the premise that the *Press-Enterprise/Waller* or "overriding interest" test applies to total closure cases, the *Douglas, Nieto*, and *Sherlock* courts believed a less stringent test should apply to cases involving partial closures of criminal trials, *i.e.*, trials where the public is not totally excluded or where in certain cases the press alone is allowed to remain. Under the "substantial reason" test, the reviewing court must determine, in light of the defendant's right to a public trial, whether the trial judge had a substantial reason for the closure, and whether the closure was narrowly tailored to exclude spectators and to the extent necessary to satisfy the purpose for which it was ordered. (*United States v. Sherlock*, 865 F.2d at 1077; see also *Nieto*, 879 F.2d at 753.) In *Sherlock*, the exclusion of the defendant's family only during the testimony of the alleged victim because she was frightened and apprehensive of speaking before defendant's family was held to constitute a narrowly tailored substantial reason which did not violate defendant's right to a public trial. In *Nieto*, the exclusion of defendant's family during the testimony of a State's witness who feared reprisal from the family was held to meet the substantial reason test requirements and not violate defendant's right to a public trial.

We find no Illinois cases which adopt, or even mention, the "substantial reason" test. On the contrary, *People v. Holveck* (1990), 141

Ill. 2d 84, recognizes and adopts the *Press-Enterprise/Waller* "overriding interest" test. Although not distinguishing between partial and total closures, *Holveck* applied the "overriding interest" test to a partial closure setting. *Holveck* was a trial for incidents of sexual assault against several five-year-old girls. On motion of the State and over defendant's objection, pursuant to section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—11) the trial court closed the courtroom when the victims testified. All spectators were excluded except members of the press, the victims' fathers, and a psychologist of one victim. The sole reason cited by the court for the closure was the "unnerving effect" on the children if the courtroom were crowded and the court's desire to make the unpleasant experience of testifying as pleasant as possible for them. Section 115—1 provided: "[W]here the alleged victim of the offense is a minor under 13 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." (Emphasis omitted.) Ill. Rev. Stat. 1985, ch. 38, par. 115—11, quoted in *Holveck*, 141 Ill. 2d at 102.

The *Holveck* court found that excluding persons, other than the press, who had no direct interest in the case, only during the testimony of a minor victim of a sexual crime, did not violate defendant's sixth amendment right to a public trial. Another Illinois case adopting the "overriding interest" test is *People v. Ramey* (1992), 237 Ill. App. 3d 1001, which appears to be a total closure case wherein the trial judge, by shutting down a public address system during the closing argument part of a trial, made a *de facto* closure of a public trial, by effectively excluding from the courtroom a jury venire assembled to hear another criminal case and members of defendant's family. The judge, *sua sponte*, ordered the loudspeaker system shut down to avoid contamination of the venire assembled in the courtroom for jury selection in another case. For security reasons, there was a glass barrier between the working part of the courtroom and that part where spectators sit. Sound emanating from the working part was available to the spectator part only via the public address system. The court held such closure violated defendant's sixth amendment right to a public trial because the judge abused his discretion in failing to meet the elements set forth in *Press-Enterprise*, for assuming, without deciding, that an overriding interest existed, namely, the tainting of a venire, and by creating a closure broader (defendant's family was also excluded from the courtroom) than necessary to protect this interest. See also *People v. Priola* (1990), 203 Ill. App. 3d 401; *People v. Mor-*

*gan* (1987), 152 Ill. App. 3d 97 (both partial closure cases utilizing section 115—11 to exclude persons not having a direct interest in the case during the testimony of certain witnesses where the court found no violation of defendant's sixth amendment right to a public trial).

In light of *Holveck's* application of the *Press-Enterprise/Waller* "overriding interest" test to a partial closure scenario, we shall apply the same test to the case before us. The public aspect of the exclusion during defendant's trial falls into two distinct classifications. One is defendant's mother and stepfather as potential witnesses and the other is defendant's siblings. There is no indication the court intended to exclude members of the press or the public in general.

Prior to the selection of the jury, defendant's attorney made a motion to exclude witnesses from the courtroom during the proceedings. The State, by its presence and failure to object, implicitly joined in such motion. In response to defendant's motion, the court excluded all witnesses. Because defendant's mother and stepfather were listed in discovery as potential witnesses, we tend to look upon this issue not as an action by the State which is directed at defendant's sixth amendment right to a public trial, but rather as an act of the parties to exercise a long-standing trial right in criminal cases to request the exclusion of witnesses from the courtroom as part of the usual trial process. It was only after the judge granted defendant's motion to exclude witnesses that defendant requested the court to make an exception to his ruling by allowing defendant's mother and stepfather to remain in the courtroom during the jury selection process. It is within the sound discretion of the trial court to grant motions to exclude witnesses from the courtroom. (*People v. Scott* (1967), 38 Ill. 2d 302, 306; *In re C.P.* (1986), 141 Ill. App. 3d 1018, 1022.) The exercise of that discretion will not be disturbed unless a clear abuse of it or prejudice to the defendant is shown. (*People v. Chennault* (1962), 24 Ill. 2d 185, 187; *In re Yates* (1976), 35 Ill. App. 3d 829, 831-32.) We find no abuse of discretion in the exclusion of defendant's mother and stepfather.

In contrast, we view the exclusion of defendant's siblings from the courtroom during *voir dire* as a partial exclusion (neither the press nor all members of the general public were excluded) which impacted on defendant's sixth amendment right to a public trial. We find that the trial court failed to apply properly the *Press-Enterprise/Waller* "overriding interest" test. The first requirement of that test is that the party seeking to close the hearing must "advance an overriding interest that is likely to be prejudiced." The closure of a trial to the public to prevent contamination of potential jurors facially meets the requirement of an overriding interest. However, the record here

fails to reveal a scintilla of evidence reasonably necessary to meet the "likely to be prejudiced" requirement. The record discloses only that it was the judge's policy ("I do it for every trial") to exclude family members from the jury selection part of trial to avoid the possibility of their comments or actions influencing the jurors. The record is devoid of any evidence of a reasonable likelihood that defendant's siblings would attempt to influence the jurors.

There is a presumption that all trials are open to the public. (*Press-Enterprise*, 464 U.S. at 508, 78 L. Ed. 2d at 637, 104 S. Ct. at 823; *Holveck*, 141 Ill. 2d at 100.) While the presumption is not absolute, it must yield only to an overriding interest that is specifically articulated (*Holveck*, 141 Ill. 2d at 100). Under the facts before us, the presumption of openness has not been overcome, and defendant was denied his constitutional right to a public trial.

We also hold that the proper remedy in this instance is the granting of a new trial. "[T]he defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." (*Waller*, 467 U.S. at 49, 81 L. Ed. 2d at 40, 104 S. Ct. at 2217.) The remedy under *Waller* is required to be one which is "appropriate to the violation." (*Waller*, 467 U.S. at 50, 81 L. Ed. 2d at 41, 104 S. Ct. at 2217.) We find that even though the violation came during the jury selection process, it is impossible to separate that part from the rest of the trial. The sixth amendment protects all of the trial component parts, and not simply the right publicly to present evidence and witnesses. (See *Waller*, 467 U.S. at 46-47, 81 L. Ed. 2d at 38-39, 104 S. Ct. at 2215-16; *Press-Enterprise*, 464 U.S. 501, 78 L. Ed. 2d 629, 104 S. Ct. 819 (closure during *voir dire*).) If the sixth amendment right is to have any vitality, we may not selectively ordain which portions of a trial are insignificant and therefore eligible for closure. *Ramey*, 237 Ill. App. 3d at 1006.

For the reasons stated, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for a new trial. Because defendant's appeal raises no questions as to the sufficiency of the evidence finding him guilty beyond a reasonable doubt, we make no findings as to the sufficiency of the evidence pursuant to the mandate of *People v. Taylor* (1979), 76 Ill. 2d 289.

Reversed and remanded.

INGLIS, P.J., and QUETSCH, J., concur.